Argued and submitted July 21, reversed September 2,
reconsideration denied October 16,
petition for review denied December 9, 1980 (290 Or 211)

In the Matter of the Compensation of
AUTWELL,
*Respondent,*

*v.*

TRI-MET,
*Petitioner.*

(WCB 79-3387, CA 16898)

615 P2d 1201

Ridgway K. Foley, Jr., Portland, argued the cause for petitioner. With him on the brief were Schwabe, Williamson, Wyatt, Moore & Roberts, and Michael B. Hoffman, Portland.

Don G. Swink, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

**ROBERTS, J.**

The issue in this workers' compensation case is whether claimant's knee condition is compensable. The referee and Board found that it is. We disagree.

Claimant had been a bus driver for Tri-Met since August, 1971. In December, 1978, he told the Tri-Met nurse that his knees had become progressively more painful over the past four years and he could not continue his job as a bus driver. Claimant then sought medical treatment first from Dr. Courogen and then from Dr. Butler.

The referee's opinion states:

"The issue is essentially a medical question. It has not been an easy diagnosis for the treating physicians. The question of permanence was not addressed by any of the physicians. There is no question that the knees became symptomatic and disabling, especially the right knee. An underlying condition that has become symptomatic and disabling on account of work activity is compensable. With most of the testimony taken by recording and transcribed I have no real opinion as to credibility. Based upon the medical evidence I believe the claimant has met his burden of proof. There is no evidence of outside employment injury to the knees and according to the physicians the continued position of flexion has probably aggravated the condition."

Employer relies on *Weller v. Union Carbide,* 35 Or App 355, 582 P2d 8 (1978), *affirmed* 288 Or 27, 602 P2d 259 (1979); *Stupfel v. Edward Hines Lumber Co.,* 35 Or App 457, 581 P2d 961 (1978), *affirmed* 288 Or 39, 602 P2d 264 (1979), and *Gibson v. SAIF,* 288 Or 45, 602 P2d 266 (1979), maintaining that the medical reports demonstrate that the industrial exposure neither caused the condition nor caused a worsening of his underlying disease.

We disagree with the referee's statement that "[a]n underlying condition that has become symptomatic and disabling on account of work activity is compensable." *Weller* requires

"* * * that in order to prevail claimant would have to prove by a preponderance of evidence that (1) his work activity and conditions (2) *caused a worsening of his underlying disease* (3) resulting in an increase in his pain (4) to the extent that it produces disability or requires medical services. * * *" 288 Or at 35. (Emphasis supplied.)

While claimant's work activity and conditions have caused an increase in pain to the extent that it required medical services, the medical evidence does not support the other requirement set out above, *i.e.,* that there was a worsening of his underlying disease.

Dr. Courogen's diagnosis is as follows:

"PRESENT ILLNESS: He has had pain in both knees for as long as he can remember, dating to early childhood. He had a diagnosis then of Osgood-Schlatter's disease, bilateral, which was he recalls, only slightly restricted his childhood activities and he was able to play some basketball in high school. He does recall, however, being sore around the tibial tuberosity bilaterally with activity. Symptoms were then fairly stable and quiescent until the past three to four years when he noticed increasing discomfort in his knee caps aggravated by sitting in a flexed position which he does as a bus driver and the symptoms being more prominent in the right leg which he uses for the pedals. At the end of the day he is barely able to get up out of his seat because of discomfort and feeling stiffness in his legs. He has not noticed swelling in the knees, but they feel tight at the end of the day. He has no other joint manifestations of · swelling or deformity, that he has noticed. There has been no fever or weight loss. Other activities which bother him are up and down stairs repeatedly, up and down inclines and he is unable to squat or kneel because of marked discomfort in the knees when he's attempting to stand upright after doing same.

"* * * * *

"IMPRESSION: I think he's suffering from PATELLOFEMORAL COMPRESSION SYNDROME & EARLY DEGENERATIVE CHANGE. I think the best course of action for him is to get away

from bus driving where he's required to sit in a knee flexed position for long periods of time. For symptomatic relief, he should use heat, aspirin as necessary. Avoid kneeling or squatting. The crux of his treatment is, of course, satisfactory occupational adjustment and move him into an area where he will be able to stand and straighten his legs out whenever necessary."

Dr. Butler's diagnosis is as follows:

"Mr. Autwell has discomfort in the right patellofemoral joint. It is my impression and that of Dr. James Baldwin that he probably has a lateral femoral compression syndrome with the lateral facet of the patella becoming slightly rough and causing discomfort. This problem was not brought on by his work. The problem pre-existed his occupation as a bus driver, but just the nature of being a bus driver and being in a sitting position with his knees flexed for a long period of time probably aggravated this enough that it has become symptomatic.

"In other words, this patient most likely had a pre-existing condition that was less symptomatic until he began working as a bus driver and since the, [*sic*] it has become symptomatic because of the nature of the job.

"* * * * *."

We find the evidence insufficient to establish a worsening of the underlying disease.

Reversed.