Argued and submitted April 21, affirmed September 29, 1982

In the Matter of the Compensation of
Kathleen M. Hall, Claimant.
## HALL,
*Petitioner,*
*v.*
## HOME INSURANCE COMPANY et al,
*Respondents.*

(WCB 80-04718, CA A22926)
651 P2d 186

Douglas L. Minson, Hillsboro, argued the cause and filed the brief for petitioner.

Deborah S. MacMillan, Portland, argued the cause for respondent The Home Insurance Company. With her on the brief were Frank A. Moscato, and Moscato & Meyers, Portland.

Noreen K. Saltveit, Portland, argued the cause and filed the brief for respondent American Motorists Insurance Co.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Claimant appeals an order of the Workers' Compensation Board that reversed a referee's order awarding her compensation. The issue is compensability.

Claimant had been an employe of GAF Corporation since 1963. In September, 1979, she experienced disabling back pain. GAF was insured by Home Insurance at that time. On November 1, 1979, GAF changed coverage to American Motorists Insurance. Claimant had disabling back pain again in April, 1980. She contends that her work activities during one of these periods is responsible for her present back condition, diagnosed as grade one spondylolisthesis. Both carriers deny compensability, and Home Insurance contends her claim against it is barred for failure to file her claim timely.

Claimant's back pain first appeared in August or September, 1979. She noticed it when she lifted heavy boxes. The pain gradually worsened. On September 19, 1979, she requested a leave of absence, checking the "illness" box rather than the "industrial accident or illness" box on the request form. At that time she was experiencing pain both at work and at home, and she did not associate the pain directly with her work. Her treating physician, Dr. Ramsthel, was unable to determine the cause of her pain, and he referred her to Dr. Keizer, an orthopedic surgeon. He diagnosed acute lumbosacral spine strain superimposed upon spondylolysis of the L-5 vertebra. He treated her conservatively and prescribed a transcutaneous electrical nerve stimulator, which afforded some relief. On November 12, 1979, claimant spoke to her employer about the possibility of obtaining workers' compensation benefits, but she did not file a claim at that time.

Claimant returned to work in January, 1980, performing light work. In April, she was reassigned to work checking and packing. This task involved packing sixty units in a box and then stacking the box on a skid. When full, each box weighed about twenty pounds. She packed 8,500 units a day. After her second full day at that task, claimant noted stiffness in her back. The following morning she had soreness in her back. Dr. Hill hospitalized her

for tests and treated her conservatively. She was released to return to light work on May 27, 1980.

■ ■ We conclude that there is insufficient evidence in the record to establish a causal relationship between claimant's work activity in August and September, 1979, and her present back pain. Dr. Ramsthel was unable to find a work connection. Dr. Keizer said that claimant's pain developed somewhat insidiously but was associated with her work at GAF. Although claimant first noticed her pain at work, ordinarily that alone does not establish either medical or legal causation. *See, e.g., Uris v. Compensation Dep't,* 247 Or 420, 427 P2d 753, 430 P2d 861 (1967).

■ ■ Dr. Hill concluded that claimant's work activity in April, 1980, did not cause any new anatomical changes that could be observed on a myelogram. In his opinion, her work did, however, "irritate" and "aggravate" her pre-existing spondylolithesis. Dr. Hill's report, read as a whole, may be construed to mean that the lifting and twisting claimant performed at work in April, 1980, increased her pain but did not worsen her underlying condition. An increase in symptomatology without a concomitant worsening of the underlying disease is not compensable. *Weller v. Union Carbide,* 288 Or 27, 35, 602 P2d 259 (1979); *Johnson v. SAIF,* 54 Or App 620, 622, 635 P2d 1053 (1981); *Autwell v. Tri-Met,* 48 Or App 99, 102, 615 P2d 1201, *rev den* 290 Or 211 (1980); *Slechta v. SAIF,* 43 Or App 443, 446, 603 P2d 366 (1979), *rev den* 288 Or 519 (1980).

■ ■ Claimant argues that *Weller* is not applicable here, because the *Weller* test relates to a claim for occupational disease, not industrial injury. *Florence v. SAIF,* 55 Or App 467, 470, 638 P2d 1161 (1981). Claimant's signed statement of May 7, 1980, states that she had no accident or injury on April 24, 1980, just stiffness at the end of the day. She also stated that she had been working on the rivet machine for several weeks when, one day in September, 1979, she "started having low back pain, which came on gradually and gradually seemed to get worse." Occupational diseases are distinguished from accidental injuries in that the former are not unexpected and are recognized as an inherent risk of continued exposure to conditions of the particular employment and are gradual rather than sudden in onset.

*Valtinson v. SAIF,* 56 Or App 184, 187, 641 P2d 598 (1982); *O'Neal v. Sisters of Providence,* 22 Or App 9, 16, 537 P2d 580 (1975). Claimant's condition more closely fits the description of an occupational disease than of an accidental injury under the act.

To be compensable as an occupational disease, claimant's gradual onset of back pain in September, 1979, which was irritated by repetitive lifting, bending and twisting in April, 1980, must meet the *Weller* test. We conclude that claimant has failed to sustain her burden to prove causation under the *Weller* test and that her claim is therefore not compensable.

Affirmed.