1998 ND 198

**Donald HIBL, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,**
Appellee,

**Civil No. 980117**

Supreme Court of North Dakota.

Nov. 19, 1998.

---

Robert A. Keogh, of Keogh Law Office, Dickinson, for claimant and appellant.

Tracy L. Vigness Kolb, Special Assistant Attorney General, Bismarck, for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Donald Hibl appealed from a judgment affirming a Workers Compensation Bureau order denying benefits for Hibl's 1996 back surgery. We affirm.

[¶ 2] In 1981, Hibl suffered a work-related injury to his thoracic spine, diagnosed as compression fractures of the T8, T11, and T12 vertebrae. The Bureau accepted Hibl's claim and paid benefits. At that time, x-rays also revealed Hibl suffered from spondylolisthesis of the lumbar spine at L5. Spondylolisthesis is a congenital defect marked by forward displacement of one vertebra over another. Sloane–Dorland Annotated Medical–Legal Dictionary 661 (1987). According to evidence presented in this case, spondylolisthesis may cause separation and slipping of the vertebrae, with resulting pain.

[¶ 3] In 1984 Hibl again suffered a work-related back injury, diagnosed as misalignment and subluxation of the D11 and L3 vertebrae, for which Hibl received chiropractic treatment. The Bureau again accepted the claim and paid benefits.

[¶ 4] As a result of the 1981 injury, Hibl underwent a thoracic spinal fusion from T3 to

T12 in 1987. The Bureau paid for this surgery, as well as subsequent rehabilitation services and retraining. In 1994 the Bureau referred Hibl to Dr. Root, who performed a permanent partial impairment (PPI) evaluation. Relying upon Dr. Root's evaluation, the Bureau paid a lump-sum PPI award to Hibl based upon a 26.5 percent whole body impairment.

[¶ 5] In 1993 Hibl saw Dr. Templeton for mid- and lower-back pain. In 1995, Hibl was referred to Dr. Wood in Minneapolis. Hibl's spondylolisthesis had progressed, and Dr. Wood performed a lumbar spinal fusion of L5–S1 in January 1996.

[¶ 6] The Bureau denied payment for the 1996 surgery concluding the surgery was not causally related to Hibl's prior work injuries. Hibl requested reconsideration and provided additional documentation. The Bureau issued an order denying benefits, and Hibl requested a rehearing. After a hearing, an administrative law judge (ALJ) issued a recommended decision, concluding Hibl's prior work injuries had substantially contributed to the progression of his spondylolisthesis and recommending payment of benefits. The Bureau rejected the ALJ's recommendation and issued its own findings of fact, conclusions of law, and order denying benefits. Hibl appealed to the district court, which affirmed the Bureau's order.

[¶ 7] On appeal, we review the Bureau's decision, not the district court's decision. *Loberg v. North Dakota Workers Compensation Bureau*, 1998 ND 64, ¶ 5, 575 N.W.2d 221. We affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Dean v. North Dakota Workers Compensation Bureau*, 1997 ND 165, ¶ 14, 567 N.W.2d 626. In evaluating the findings of fact, we do not make independent findings or substitute our judgment for that of the Bureau, *id.*, but determine only whether a reasoning mind

reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Loberg*, at ¶ 5.

[¶ 8] The pivotal dispute is whether Hibl's 1981 and 1984 work injuries substantially aggravated or accelerated progression of his spondylolisthesis. In order to receive benefits from the fund, a claimant has the burden of proving he has sustained a compensable injury. N.D.C.C. § 65–01–11; *Symington v. North Dakota Workers Compensation Bureau*, 545 N.W.2d 806, 808 (N.D.1996); *Wherry v. North Dakota State Hospital*, 498 N.W.2d 136, 139 (N.D.1993). At the time of Hibl's 1996 surgery, N.D.C.C. § 65–01–02(9)(b)(6) [1] defined "compensable injury," to exclude:

> Injuries attributable to a preexisting injury, disease, or condition which clearly manifested itself prior to the compensable injury. This does not prevent compensation where employment substantially aggravates and acts upon an underlying condition, substantially worsening its severity, or where employment substantially accelerates the progression of an underlying condition. It is insufficient, however, to afford compensation under this title solely because the employment acted as a trigger to produce symptoms in a latent and underlying condition if the underlying condition would likely have progressed similarly in the absence of the employment trigger, unless the employment trigger is determined to be a substantial aggravating or accelerating factor. An underlying condition is a preexisting injury, disease, or infirmity.

Under the statute, Hibl is entitled to benefits for his 1996 surgery only if his prior work injuries were a substantial aggravating or accelerating factor in the progression of his underlying spondylolisthesis.

[¶ 9] The parties presented conflicting medical evidence on this issue. Dr. Wood testified by deposition that Hibl's prior work injuries were not substantial contributing factors to Hibl's congenital spondylolisthesis

---

1. The definition of "compensable injury" has been amended and is now codified at N.D.C.C. § 65–01–02(11).

and that the disease progressed naturally unrelated to those prior injuries. In reaching this opinion, Dr. Wood stressed the length of time between the earlier injuries and Hibl's complaints of low back pain, and the spatial distance between Hibl's thoracic spinal fusion and his 1996 lumbar spinal fusion. Dr. Root testified that, in his opinion, the 1996 surgery was causally related to the prior work injuries, and that the injuries were a contributing factor in the progression of Hibl's spondylolisthesis. Although Dr. Root could not provide an exact percentage by which the work injuries contributed, he did testify they significantly contributed, and he equated "significant" with "substantial."

[¶ 10] The Bureau was thus presented with conflicting medical opinions. It is the Bureau's responsibility to weigh the credibility of medical evidence. *Symington*, 545 N.W.2d at 809; *Otto v. North Dakota Workers Compensation Bureau*, 533 N.W.2d 703, 706–07 (N.D.1995). In resolving conflicts in the medical evidence, however, the Bureau must consider the entire record, clarify inconsistencies, and explain its reasons for disregarding medical evidence favorable to the claimant. *Nemec v. North Dakota Workers Compensation Bureau*, 543 N.W.2d 233, 238 (N.D.1996). The explanation for rejection of medical evidence favorable to the claimant may consist of the Bureau's analysis of why it accepted contrary evidence. *Id.* at 238–39.

[¶ 11] The Bureau specifically explained why it found Dr. Wood's opinion was entitled to greater weight than Dr. Root's opinion. The Bureau's explanation notes Dr. Wood is an orthopedic surgeon specializing in surgery of the spine, he was Hibl's treating physician, and he performed the 1996 spinal fusion surgery at issue in this case. By comparison, Dr. Root was a physical medicine rehabilitation specialist who examined Hibl once for a PPI evaluation in 1994. The Bureau also

stressed Dr. Wood's explanation of the reasons for his opinion, including the time interval between the work injuries and Hibl's complaints of low back pain leading to the 1996 surgery, and the distance between Hibl's thoracic fusion at T3 to T12 and the lumbosacral spondylolisthesis at L5–S1.

[¶ 12] Our limited scope of review of the Bureau's findings of fact requires we exercise restraint and not make independent findings or substitute our judgment for that of the Bureau when we review the Bureau's resolution of conflicting medical evidence. *Nemec*, 543 N.W.2d at 239. We conclude the Bureau adequately explained its reasons for accepting Dr. Wood's opinion rather than Dr. Root's opinion. The record supports the Bureau's determination that Dr. Wood's opinion was entitled to greater weight than Dr. Root's, and that Hibl failed to prove his prior work injuries substantially contributed to his underlying spondylolisthesis.[2]

[¶ 13] The judgment affirming the order of the Bureau is affirmed.

[¶ 14] SANDSTROM, NEUMANN, and MARING, JJ., concur.

[¶ 15] The Honorable HERBERT L. MESCHKE, a member of the Court when this case was heard, retired effective October 1, 1998, and did not participate in this decision.

[¶ 16] The Honorable CAROL RONNING KAPSNER was not a member of the Court when this case was heard and did not participate in this decision.

---

2. When the Bureau receives conflicting medical opinions from two doctors, N.D.C.C. § 65–05–28(3) authorizes appointment of an impartial third doctor to conduct an independent medical examination of the claimant. *See Symington*, 545 N.W.2d at 810. Hibl did not request appointment of another doctor.